IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Melvin Gene Ross,                    )
                                     )
                    Petitioner,      )
                                     )
          v.                         )    CIV 05-97 PHX DGC (VAM)
                                     )
Dora Schriro, et al.,                )    REPORT AND RECOMMENDATION
                                     )
                    Respondents.     )
_____)

TO THE HONORABLE DAVID G. CAMPBELL, U.S. DISTRICT JUDGE.

     Melvin Gene Ross ("petitioner") filed a pro se Petition for
Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Petitioner
raises five grounds for relief in the petition.  (Doc. 1 at pp. 5-
9 and Attachments).  Respondents filed an answer opposing the
granting of habeas relief.  (Doc. 13).

## BACKGROUND

     Petitioner was charged by Information in CR 98-017796 with
auto theft, a Class 3 felony on December 28, 1998.  (See Doc. 14,
Exhibit G at 16).  Subsequently, the State amended the Information
to include the charges that petitioner committed the offense while
released on bond in another case, CR 98-016058, and that he had
five historical prior felony convictions in CR 96-93770 (burglary
in the third degree), CR 92-09161 (burglary in the second degree
and burglary in the third degree), CR 90-04554 (resisting arrest)

1 and CR 150619 (burglary in the second degree).   (Id. at 21,22).

2    Trial was held from April 6-7, 1999, and petitioner was

3 convicted of the crime as charged.  (Doc. 16, Exhibit J at pp. 64-

4 65).  On May 5, 1999, a hearing was conducted with respect to the

5 State's sentencing-enhancement allegations.  As a result of this

6 hearing, the trial court concluded that petitioner had been

7 convicted of felonies in three separate cases, namely, CR 96-

8 93770, CR 92-09161 and CR 150619.  (Doc. 16, Exhibit K at p. 18).

9 In addition, the trial court found that petitioner committed the

10 auto theft while on release in CR 98-016058.  (Id. at pp. 18-19).

11 As a result of the convictions and these findings of prior felony

12 convictions and that the crime was committed while on release in

13 another case, the Court sentenced petitioner to the presumptive

14 term of 13.25 years in prison.  (Doc. 16, Exhibit L at p. 34).

15    Petitioner filed a direct appeal to the Arizona Court of

16 Appeals raising the following issues:

17      1. Did the trial court abuse its discretion when it
       denied [petitioner's] request for an evidentiary hearing
18      on his motion for a new trial?

19      2. Did the trial court abuse its discretion by refusing
       [petitioner's] request for a curative instruction on the
20      accused's right not to testify following the
       prosecutor's unequivocal rebuttal comment that the
21      accused did not testify?

22 (Doc. 16, Exhibit M at p. 6, 7-10 and 11-13).

23    On July 25, 2000, the Arizona Court of Appeals affirmed

24 petitioner's conviction in a memorandum decision.  (Doc. 16 at

25 Exhibit Q).  Petitioner sought review in the Arizona Supreme

26 Court.  In his pro se petition for review, petitioner, in addition

27 to the claims raised before the Arizona Court of Appeals, stated

28                                2

"other issues needing discussion by this court ..."  Petitioner then listed several statements that do not make sense.  (See Doc. 16, Exhibit U at p. 2).  In addition, petitioner also filed a motion in the Arizona Supreme Court "TO ADDRESS THE ISSUE OF VEHICLE DAMAGES ON THE BEHALF THE STATE'S VICTIM CLAIMS OF EXTENSIVE DAMAGES PURSUANT TO RULE 31.19 AND A.R.S. § 13-1813(c) AND 13-1813(D); 13-2305."  (Id. at Exhibit V).  In essence, this motion challenges the restitution order issued by the trial court.

The Arizona Supreme Court denied the petition for review and the Motion to Address the Issue of Vehicle Damages ..." without comment on March 22, 2001.  (Doc. 16 at Exhibit W).

On May 29, 2002, petitioner filed a petition for post-conviction relief pursuant to Ariz.R.Crim.P. 32.1 in the trial court raising numerous issues.  (Doc. 15, Exhibit G at 132).  On February 3, 2003, the trial court summarily dismissed the Rule 32 petition with respect to all claims raised.  (Id., Exhibit H at 156).

Petitioner filed for review of the trial court's denial in the Arizona Court of Appeals, raising the following grounds:

1. Insufficient Evidence.

2. Inappropriate Restitution Lien.

3. Ineffective Assistance of Counsel in failing to contact, interview, list, and call witnesses that were vital to the defense strategy including:

a. Girtha Gist;

b. The Victim's Employer;

c. A tow truck driver.

(Doc. 16, Exhibit X at pp. 3-17).

After filing his original petition for review, petitioner attempted to file supplemental briefing which was denied. (Doc. 16 at Exhibit Y). Petitioner later filed additional motions to amend or supplement, (Id. at Exhibits Z, BB and DD), which were also denied by the Arizona Court of Appeals. (Id. at Exhibits AA, CC and EE, respectively). On June 14, 2004, the Arizona Court of Appeals summarily denied the petition for review. (Id. at Exhibit FF).

On January 10, 2005, petitioner filed two separate petitions for writ of habeas corpus in the District Court. CV 05-98-PHX-DGC (VAM) challenged the validity of his conviction in state CR 98-016058. CV 05-97-PHX-DGC (VAM) the case at issue here, challenged the conviction in CR 98-017796. (See Doc. 1 at p. 1). Respondents sought to consolidate these cases, petitioner objected to consolidation and the motion was denied. (Docs. 7, 8 and 12). However, the proposed consolidated answer was ordered by the Court to be filed as the answer in this case. (Doc. 12 at p. 3).

In his habeas petition, petitioner makes the following statements:

**GROUND I:** [FEDERAL] DUE PROCESS OF LAW VIOLATED.

On 12/8/98, with Jason Grant's [own] permission, I was allowed to possess and to control the listed vehicle. Allegedly reported as stolen to the Glendale Police Authorities on 12/9/ - 10/98 .... On 12-11-98, I was anonymously trailed by Phx. police officer's (Beauchamp and Margiotta). These cops performed a vehicle plate check - NCIC. Justification for their actions was claimed to be that of supicious [sic] driving. Yet neither officer bothered to conduct a vehicle traffic stop, thus allowing me to park the vehicle in a well-lighted Walgreen's parking lot as this was at 8:59 p.m. Upon parking, both officers returned and approached me with guns to effectuate my arrest. I quickly complied

4

and was searched and cuffed to be escorted to the patrol car.  The key to Mr. Grant's vehicle was found in my pocket but never preserved as exculpate nor inculpate evidence?  Shortly thereafter, Officer Margiotta questioned me but without first Mirrandadizing [sic] me. This officer elicited some statements from me that the State used to incriminate me with.  Later, Officer Beauchamp questioned me then arrested me to be booked .... For these reasons the evidence was insufficient. Thus causing defense counsel to move for a directed verdict ....

**GROUND II:** [FEDERAL] DUE PROCESS OF LAW.

On 7/30/99, during sentencing phase, claims for restitution [were] heard by both sides.  Mr. Grant [the owner of the stolen car] failed to attend.  Trial Court lacked jurisdiction to impose restitution .... Mr. Gordon, the insurance agent was the only witness (for the State) that was present.  The evidence adduced was unreliable and inaccurate .... The defense counsel, Mr. Rossi pointed out the fact that the State's evidence failed to support vehicle damages as resulting from the alleged offense. [Citation omitted].  The Court sided with the State, regardless to settle the issue(s).  In fact, the appraisal reports and the supplied photo taken by CCC-Business service for Guide One Insurance Co., indicate that those significant damages to the vehicle occurred while the vehicle was in the owner's possession.  The Court tacitly aggreed (sic) by admitting that the damages were "dents" but not at the milage as claimed ....

**GROUND III:** [FEDERAL] DUE PROCESS OF LAW VIOLATIONS.

This petitioner was systematically denied effective assist. of Counsel representation. **[a]** No interview was conducted of the exculpatory witnesses who were made know, (see PRCP-Records). **[b]** No meaningful investigation was ever conducted by the defense [counsel] into the alleged theft claims prior to pre-court activity. **[c]** No relevant pre-trial motions were filed (See J. Ground I); **[d]** petitioner was unduly denied the compulsory process to confront the witness Micheal Gordon in the trial proceedings. **[e]** The defense counsel failed to reveal the prosecutorial's intent to establish false-evidence by usage of perjured testimony. The body of the offense (corpus delicti) was established on false-claims. **[f]** Counsel failed to object to the hearsay testimony on record thereby allowing a grave [injustice] prosecutorial practice to infect the trial with lies! **[g]** The preliminary counsel denied petitioner the right to move the Justice of the Peace to entertain

the question of a 'Gerstein Violation' because of a
failure to investigate prior to the prelim. hearing. **[h]**
There were damaging waiver(s) of my rights and my trial
counsel failed to file my own version of the N.T. Motion
as well [as] the Motion to Vacate Judgement .... State
court review of this Ground was inadequate. MANDATING a
Fed. hearing de novo DUE to a structural (trial) error
not [amenable] to harmless error analysis.  Requires a
reversal.

**GROUND IV:** [FEDERAL] DUE PROCESS VIOLATIONS.

The petitioner produced newly discovered evidence for
which the State claims lacked relevance to the issues
presented. [Citation omitted]. The newly [discovered]
evidence is authenticated in accord with federal law.
It raises the question of a 'reversible error' because
of a prosecutorial withholding [of] exculpatory
documents requested by the defense prior to the trial.
Including Mr. Gordon and Officer Beauchamp's photographs
taken during the recovery of the listed, allegedly
stolen, vehicle ....

**GROUND V:** [FEDERAL] DUE PROCESS VIOLATION.

For the reason that the trial lawyer informed me that
the State wanted to convict me for my prior offenses and
not so much the alleged offense itself, constitutes
double jeopardy ....

(Doc. 1 at pp. 5-8 and Attachments).

<u>**DISCUSSION**</u>

**A. Anti-Terrorism and Effective Death Penalty Act of 1996**

Pursuant to 28 U.S.C. § 2254(d), the following standard for
granting a federal habeas petition originating from a state court
conviction applies:

An application for a writ of habeas corpus on behalf of
a person in custody pursuant to the judgment of a State
court shall not be granted with respect to any claim
that was adjudicated on the merits in State court
proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an unreasonable interpretation of the facts in light of the evidence presented in the State court proceedings.

The Act also codifies a presumption of correctness of state court findings of fact. 28 U.S.C. § 2254(e)(1) states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence." As discussed more fully below, these provisions of the Act set the standard for the Court's evaluation of the merits.

The Act limits the district court's discretion to hold evidentiary hearings. 28 U.S.C. § 2254(e)(2) states:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

(A) the claim relies on--

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

A petition may be denied on the merits even though it contains unexhausted claims, and the state does not waive exhaustion except by an express waiver on the record. 28 U.S.C. §2254(b)(2) and (3).

**B. Exhaustion and Procedural Default**

<u>1. Law Generally</u>

A federal court has authority to review a federal constitutional claim presented by a state prisoner if available state remedies have been exhausted.  <u>Duckworth v. Serrano</u>, 454 U.S. 1, 3 (1981)(per curiam); <u>McQueary v. Blodgett</u>, 924 F.2d 829, 833 (9th Cir. 1991).  The exhaustion doctrine, first developed in case law and codified at 28 U.S.C. § 2254, now states:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available state corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> . . . . . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The exhaustion requirement can be satisfied in one of two ways.  First, a petitioner can fairly present his or her claims to the Arizona Court of Appeals by properly pursuing them through either the state's direct appeal process or through appropriate post-conviction relief.  <u>See</u> <u>Swoopes v. Sublett</u>, 196 F.3d 1008, 1010 (9th Cir. 1999).  Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  <u>Brown</u>

1  v. Easter, 68 F.3d 1209, 1211 (9th Cir. 1995); Turner v. Compoy,

2  827 F.2d 526, 528 (9th Cir. 1987), cert. denied, 489 U.S. 1059

3  (1989).

4        Claims presented in habeas petitions are considered exhausted

5  if they have been ruled upon by the Arizona Court of Appeals.

6  However, if the sentence received is life imprisonment, the claims

7  must be presented to the Arizona Supreme Court.  Swoopes, 196 F.3d

8  at 1010.   Although a federal habeas petitioner may reformulate

9  somewhat the claims made in state court, Tamapua v. Shimoda, 796

10 F.2d 261, 262 (9th Cir. 1986), rev'd in part on other grounds by

11 Duncan v. Henry, 513 U.S. 364 1995), the substance of the federal

12 claim must have been "fairly presented" in state court.  Anderson

13 v. Harless, 459 U.S. 4, 6 (1982)(per curiam); Picard v. Connor,

14 404 U.S. 270, 278 (1971).  While the petitioner need not recite

15 "book and verse on the federal constitution," Picard, 404 U.S. at

16 277-78 (quoting Daugherty v. Gladden, 257 F.2d 750, 758 (9th Cir.

17 1958)), it is not enough that all the facts necessary to support

18 the federal claim were before the state courts or that a "somewhat

19 similar state law claim was made."  Anderson, 459 U.S. at 6.

20       As an alternative to presenting his claims to the highest

21 state court, a petitioner can satisfy the exhaustion requirement

22 by demonstrating that no state remedies remained available at the

23 time the federal habeas petition was filed.  Engle v. Isaac, 456

24 U.S. 107, 125 (n. 28)(1982); White v. Lewis, 874 F.2d 599, 602

25 (9th Cir. 1989).  However, this path is fraught with danger:

26       If state remedies are not available because the
         petitioner failed to comply with state procedures and
27       thereby prevented the highest state court from reaching

28                                    9

the merits of his claim, then a federal court may refuse to reach the merits of that claim as a matter of comity.

Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988); see also Swoopes, 196 F.3d at 1010 (determining that the exhaustion requirement is satisfied if a petitioner presented a claim to the Arizona Court of Appeals either on direct review or via a petition for post-conviction relief). This failure to comply with reasonable state procedures is usually characterized as "procedural default," "procedural bar," or a "waiver." As discussed, exhausting state remedies by means of a procedural default is risky. The burden is on the petitioner to show that he or she has properly exhausted each claim. Dismissal of the petition is proper when the record does not show that the exhaustion requirement is met. Cartwright v. Cupp, 650 F.2d 1103, 1104 (9th Cir. 1981)(per curiam), cert. denied, 455 U.S. 1023 (1982). If the unavailability of state remedies is in no way the fault of the petitioner or his or her counsel, the exhaustion requirement will likely be satisfied and a federal court may reach the merits of the petitioner's habeas claims.

In many cases, however, the lack of available state remedies is a direct result of the petitioner's failure to avail himself of the state remedies in a timely or procedurally correct manner. In such instances, the petitioner has procedurally defaulted, and may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.[1]   Reed v.

---

[1]Appellate defaults are examined under the same standards that apply when a defendant fails to preserve a claim during trial. Smith v. Murray, 477 U.S. 527, 533 (1986).

1    _Ross_, 468 U.S. 1, 11 (1984); _Wainwright v. Sykes_, 433 U.S. 72, 90-

2    91 (1977); _see also_ _Teague v. Lane_, 489 U.S. 288, 298 (1989);

3    _Tacho v. Martinez_, 862 F.2d 1376, 1380 (9th Cir. 1988).  "Cause"

4    is the legitimate excuse for the default.  _Thomas v. Lewis_, 945

5    F.2d 1119, 1123 (9th Cir. 1991).  "Prejudice" is actual harm

6    resulting from the alleged constitutional violation.  _Id._

7         "Because of the wide variety of contexts in which a

8    procedural default can occur, the Supreme Court 'has not given the

9    term "cause" precise content.'" _Harmon v. Barton_, 894 F.2d 1268,

10    1274 (11th Cir.)(quoting _Reed_, 468 U.S. at 13), _cert. denied_, 498

11    U.S. 832 (1990).  The Supreme Court has suggested, however, that

12    cause should ordinarily turn on some objective factor external to

13    petitioner, for instance:

14         ... a showing that the factual or legal basis for a
     claim was not reasonably available to counsel, (citation

15         omitted), or that "some interference by officials,"
     (citation omitted), made compliance impracticable, would

16         constitute cause under this standard.

17    _Murray v. Carrier_, 477 U.S. 478, 488 (1986); _see also_ _Harmon_, 894

18    F.2d at 1275; _Allen v. Risley_, 817 F.2d 68, 69 (9th Cir. 1987).

19    The standard is one of discretion intended to be flexible and

20    yielding to exceptional circumstances.  _Hughes v. Idaho State_

21    _Board of Corrections_, 800 F.2d 905, 909 (9th Cir. 1986).  The

22    "cause and prejudice" standard is equally applicable to _pro se_

23    litigants, _Harmon_, 894 F.2d at 1274; _Hughes_, 800 F.2d at 908,

24    whether literate and assisted by "jailhouse lawyers," _Tacho_, 862

25    F.2d at 1381; illiterate and unaided, _Hughes_, 800 F.2d at 909, or

26    non-English speaking.  _Vasquez v. Lockhart_, 867 F.2d 1056, 1058

27    (9th Cir. 1988), _cert. denied_, 490 U.S. 1100 (1989).

28            11

1    Finally, if a claim has been found to be procedurally

2  defaulted, the failure to establish cause for the default may be

3  excused under exceptional circumstances.  For instance:

4         ... in an extraordinary case, where a constitutional
          violation has probably resulted in the conviction of one
5         who is actually innocent, a federal habeas court may
          grant the writ even in the absence of showing cause for
6         the procedural default.

7  Murray, 477 U.S. at 496; see also Schlup v. Delo, 513 U.S. 298,

8  327 (1995)(to meet the Murray standard, "the petitioner must show

9  that it is more likely than not that no reasonable juror would

10  have convicted him in the light of the new evidence").

11    2. Application of Law to Facts of the Case

12    Respondents contend that petitioner's claims, save the claims

13  raised in Grounds I, II, and portions of Grounds III and IV are

14  procedurally barred from federal habeas review.  With respect to

15  Ground III (raising several claims of ineffective assistance of

16  counsel), respondents assert that the only claim which was

17  properly exhausted is the claim that trial counsel failed to

18  properly interview and call at trial certain "exculpatory"

19  witnesses.  Respondents assert all other claims of ineffective

20  assistance of counsel are procedurally defaulted.  Similarly, with

21  respect to the claims presented in Ground IV, respondents assert

22  the only exhausted claim is petitioner's claim of failure to

23  disclose exculpatory evidence.  Respondents contend all other

24  claims raised in Grounds III, IV and Ground V are procedurally

25  defaulted.[2]

26  ────────────

27      [2]Respondents originally intended their answer to be
   consolidated with respect to claims raised in CIV 05-98-PHX-DGC

28                                    12

1       Upon review, the Magistrate Judge agrees that the substance

2   of the claims presented in Ground III (save the claim of

3   ineffective assistance with respect to failing to interview and

4   present exculpatory witnesses), IV and V were not properly

5   exhausted in state court.  Review of both petitioner's direct

6   appeal and petition for Rule 32 relief, show that the substance of

7   the claims raised in Ground V were not presented.  With respect to

8   Ground III (raising various claims of ineffective assistance of

9   counsel), review of his brief in support of his petition for

10  review to the Arizona Court of Appeals shows that the only claim

11  of ineffective assistance of counsel presented is the claim

12  concerning the failure to interview and call exculpatory

13  witnesses.  (See Doc. 16, Exhibit X at pp. 10-14).  Similarly, to

14  the extent petitioner raises a claim of failure to disclose

15  exculpatory evidence (from the victim's insurance carrier) in

16  Ground IV, this claim was presented in his Rule 32 petition.  (See

17  id. at p. 13).

18      In his answer, petitioner states he presented the substance

19  of the claims raised in Grounds III, IV and V in a special action

20  proceeding filed on June 4, 2004, in the Arizona Court of Appeals.

21  No documentation has been filed concerning this special action by

22  respondents.  However, petitioner has included with his petition,

23  a copy of an order issued by the Arizona Court of Appeals which

24  _____

25  (VAM).  As a result they argue that the claims raised in that
    habeas petition (which they designate as Grounds VI, VII, VIII and
26  IX), with one exception, are also all procedurally defaulted.  In
    light of the Court's denial of the motion to consolidate, the Court
27  should not consider any claims with respect to CIV 05-98.  Those
    claims will be dealt with when the Court decides that case.

28                                13

disposes of a motion for an "Emergency Petition for Interlocutory Relief and Special Action Relief" and a motion "By Leave of Court to Plead Cause for the Writ of Special Action to be Issued". (See Doc. 1 at Attached Order). Thus, it appears petitioner did not file a separate special action proceeding, rather he sought leave to that effect as part of his Rule 32 and his motions were denied. Thus, the only issues ever properly before the Arizona Court of Appeals were those issues raised in his Rule 32 petition.[3]

In light of petitioner's failure to present the substance of the issues raised in Ground III (except the failure to interview and call exculpatory witnesses) and Ground V, those claims are procedurally defaulted and should be denied.

As noted by respondents, petitioner did raise the substance of the claims raised in Grounds I and II in his Rule 32 petition. (See Doc. 16, Exhibit X at pp. 3-14). However, review of the State Rule 32 petition shows that neither of these claims were presented in state court as violations of federal law or petitioner's federal constitutional rights. (See id.). As such, the federal nature of these claims was not exhausted in state court. Petitioner's failure to raise these issues in state court as federal violations means the claims are not cognizable on federal habeas review. See 28 U.S.C. § 2254(a). In addition, the time for petitioner to present any claims regarding his convictions and sentences in CR 98-017796 in state court, via

---

[3]Similarly, as noted by respondents, petitioner sought leave to supplement his Rule 32 petition on several occasions, but each time the motion was denied. (See Doc. 16, Exhibits Z, AA, BB, CC, DD and EE).

appeal or post-conviction relief, has long since passed.
Petitioner has not made, nor is there any reason to believe,
petitioner could present a viable basis for presenting an untimely
Rule 32 petition in state court.  <u>See</u> Ariz.R.Crim.P. 32.4(a);
32.1(d) - (g).  As a result, to the extent petitioner argues in
his federal petition that his claims in Grounds I and II violate
his federal constitutional rights, those claims were not presented
in state court and are procedurally defaulted.

The Court may ignore the procedural default if petitioner
presents a colorable claim of actual innocence such that failure
to consider the claims would result in his conviction, though
actually innocent.  Nothing in the record supports such a claim.
As a result, the only claims properly exhausted in state court are
the claim that his attorney rendered ineffective assistance when
he failed to interview and call certain witnesses (Ground III),
and the claim of a Brady violation raised in Ground IV.

**C. Merits of Petitioner's Properly Exhausted Claims**

<u>1. Standard of Review for Habeas Claims</u>

Under the AEDPA the issuance of writs of habeas corpus is
limited to circumstances in which the state court adjudication
"resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States ... or
resulted in a decision that was an unreasonable determination of
the facts ..."  28 U.S.C. §2254(d)(1) and (2).  "[A] state court
decision applies 'clearly established' Supreme Court law under the
AEDPA when it 'applies a rule dictated by [Supreme Court]

precedent existing at the time the defendant's conviction became

final."  Campbell v. Rice, 265 F.3d 878, 889 (9th Cir.

2001)(citing Williams v. Taylor, 529 U.S. 362, 376 (2001)).  As

stated by the U.S. Supreme Court:

> Under the "contrary to" clause, a federal habeas court
> may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case
> differently than this Court has on a set of materially
> indistinguishable facts.  Under the 'reasonable
> application' clause, a federal habeas court may grant
> the writ if the state court identifies the correct
> governing legal principle from this Court's decisions
> but unreasonably applies that principle to the facts of
> the prisoner's case.
>
> ...
> [A]n unreasonable application of federal law is
> different from an incorrect application of federal law
> ...a federal habeas court may not issue the writ simply
> because that court concludes in its independent judgment
> that the relevant state court decision applied clearly
> established federal law erroneously or incorrectly.
> Rather, the application must also be unreasonable.

Williams, 529 U.S. at 411, 412-13 (O'Connor, J., concurring in

part, and concurring in the judgment).  "In order for a state

court's application of federal law to be unreasonable, it must

have been clearly erroneous." Van Tran v. Lindsey, 212 F.3d 1143,

1152-54 (9th Cir. 2000).  "Petitioner cannot meet his burden by

simply convincing the federal court that he has the better of two

reasonable legal arguments." Wildman v. Johnson, 261 F.3d 832,

837 (9th Cir. 2001)(citing Van Tran, 212 F.3d at 1154)).

### 2. Petitioner's Remaining Habeas Claims

**a. Ineffective Assistance of Counsel**

i. Law Generally

Claims of ineffective assistance are analyzed pursuant to

16

<u>Strickland v. Washington</u>, 466 U.S. 668 (1994).  In order to prevail on such a claim, petitioner must show:

> 1. Counsel's representation fell below the objective standard for reasonableness; and
>
> 2. There is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

<u>Strickland</u>, 466 U.S. at 687-88, 694; <u>see also</u> <u>United States v. Thornton</u>, 23 F.3d 1532, 1533 (9th Cir. 1994)(per curiam); <u>United States v. Solomon</u>, 795 F.2d 747, 749 (9th Cir. 1986).

This two-pronged test "deficient performance and prejudice" poses a mixed question of law and fact.  <u>Strickland</u>, 466 U.S. at 698; <u>Thompson v. Calderon</u>, 86 F.3d 1509, 1515 (9th Cir. 1996). The court hearing an ineffective assistance of counsel claim must consider the totality of the evidence with an eye toward the ultimate issue of whether counsel's conduct so undermined the functioning of the adversarial process that the proceeding lacked fundamental fairness.  <u>Strickland</u>, 466 U.S. at 686; <u>Card v. Dugger</u>, 911 F.2d 1494 (11th Cir. 1990)(observing that counsel cannot be labeled ineffective for failing to raise issues which have no merit).  Reasonableness is judged from counsel's perspective at the time of the alleged error in light of all the circumstances.  <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986); <u>Strickland</u>, 466 U.S. at 689.

Deficient performance is one in which counsel's errors were so great he or she was not functioning as the counsel guaranteed by the Sixth Amendment.  <u>Iaea v. Sunn</u>, 800 F.2d 861, 864 (9th Cir. 1986).  To prove such ineffectiveness, a petitioner must

17

1   demonstrate that counsel's actions were "outside the wide range of

2   professionally competent assistance, and that the deficient

3   performance prejudiced the defense." United States v. Houtchens,

4   926 F.2d 824, 828 (9th Cir. 1991)(quoting Strickland, 466 U.S. at

5   687-90).  There is a strong presumption counsel's conduct falls

6   within the wide range of reasonable professional assistance and

7   that, under the circumstances, the challenged action might be

8   considered sound trial strategy.  United States v. Quinterro-

9   Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995), cert. denied, 519

10  U.S. 848 (1996); United States v. Molina, 934 F.2d 1440, 1447 (9th

11  Cir. 1991).

12      ii. Analysis of Petitioner's Ineffective Assistance Claim

13          Petitioner asserts his counsel rendered ineffective

14  assistance when "[n]o interview was conducted of the exculpatory

15  witnesses who were made known, ..." (Doc. 1 at p. 7).  This claim

16  echoes his claim presented in his Rule 32 brief, wherein he

17  contended counsel failed "to contact, interview, list, and call

18  witnesses vital to the defense strategy." (Doc. 16, Exhibit X at

19  p. 10).  Specifically, petitioner cited the following witnesses:

20      (1) Girtha Gist:

21      (2) The truck owner's (Jason Grant's) employer:

22      (3) A tow truck driver.[4]

23  (See Doc. 16, Exhibit X at pp. 10-12).

24  _____

25      [4]The Magistrate Judge notes that in his Rule 32 petition to
    the trial court he did not specify the basis for ineffective
26  assistance of counsel. (Doc. 15, Exhibit G at p. 132).  However,
    the Magistrate Judge is unclear whether the complete Rule 32
27  petition was filed as part of the record on review.

28                                  18

**I. Trial Evidence**

At this point it is helpful to recount the evidence adduced at trial.  The State first called one of the arresting officers, David Beauchamp.  Officer Beauchamp testified he noticed petitioner while on his shift on December 11, 1998 at approximately 9:00 p.m.  Petitioner pulled into a Walgreens parking lot as soon as the officer pulled in behind him.  Beauchamp ran a records check of the license plate and the truck and it was identified as stolen.  Beauchamp then pulled into the parking lot, petitioner was walking away and the officer arrested him.  (Doc. 15, Exhibit I at pp. 94-97).  After Beauchamp "Mirandized" petitioner, petitioner told him he had permission to drive the truck.  (Id. at p. 99).  Beauchamp testified that petitioner told him he picked up the truck around 61st Avenue and Grand on December 9, 1998 at 4 p.m.  Petitioner told him he had permission to drive the truck but petitioner did not know the name of the person who gave him permission.  (Id. at p. 100).  Beauchamp stated that petitioner told him he had known the car's owner for about two weeks but did not know his name.  (Id.).  Beauchamp testified he asked petitioner why this person gave him the truck and petitioner told him that the owner wanted him to purchase drugs and "to possibly wreck the vehicle for some type of insurance scam."  (Id. at p. 101).  Beauchamp found keys to the vehicle on petitioner's person.  (Id. at p. 98).  Beauchamp testified that the vehicle had sustained physical damage, in particular, to the driver's side door.  (Id. at p. 118).

Similarly, Officer Margiotta, another Phoenix police officer,

described his contact with petitioner on the night in question,
December 11, 1998.  Margiotta testified when he heard about
Officer Beauchamp making a stolen vehicle stop, he proceeded to
the area to act as backup, arriving shortly thereafter.  (Doc. 15,
Exhibit I at pp. 121-22).  Margiotta testified that when he
arrived, Officer Beauchamp had already placed petitioner in
custody.  Margiotta stated he then looked at the vehicle in
question, processed fingerprints and asked for a tow truck.  (Id.
at p. 123).  Margiotta testified that he didn't recall any damage
to the truck but admitted he did not look the truck over
"extensively."  (Id.).

Next, the State called Jason Grant to testify.  Grant
testified that he worked for a company named Kitchen Renew in
December, 1998.  Grant also testified he owned a 1995 Dodge Dakota
pickup which he drove to work on December 9, 1998.  (Doc. 15,
Exhibit I at pp. 126-27).  He testified he did not drive his truck
home that night because he worked late, needed to pick up supplies
at Home Depot to finish a job and, as a result, borrowed his
boss's truck, which was bigger and fully insured.  (Id. at p.
128).  As a result, he took his boss' truck home and picked up the
supplies at the Home Depot the next morning on his way to work.
(Id.).

Grant testified his vehicle was locked and in front of the
Kitchen Renew building when he drove home from work in his boss's
truck at about 7 or 8 p.m. on December 9, 1998.  He states he kept
a spare key to the vehicle in a glove box of the truck.  When he
returned the next day at about 9 a.m, his truck was gone.  (Doc.

15, Exhibit I at p. 130).  Grant states he contacted the Glendale Police to see if the vehicle might have been towed, found out it was not towed and then made a stolen vehicle report.  (Id.). Grant testified he did not know petitioner and did not give him permission to drive his truck.  (Id.).  Grant testified he identified his truck later after police told him they recovered it and that it was badly damaged when he saw it.  (Id. at p. 133).

## II. Failure to interview potential witnesses.

In his habeas petition, petitioner does not outline the specific witnesses he claims counsel erred in not interviewing, however, in his Rule 32 brief filed in the Arizona Court of Appeals, petitioner asserts counsel erred in failing to interview, and subsequently call as witnesses Girtha Gist, vehicle owner Jason Grant's employer, and a tow truck driver.  (Doc. 16, Exhibit X at pp. 10-11).  Petitioner states that Ms. Gist saw him driving the vehicle before it was reported stolen; the victim's boss would have corroborated Ms. Gist and the tow truck driver could have impeached the insurance witness on the vehicle's condition. (Id.).

Petitioner's claim of ineffective assistance fails at the most basic level.  Petitioner has provided no evidence, by way of affidavit or other sworn statement, to establish that any of the witnesses in question would have testified as he claims.  Without some assurance as to the nature of their testimony beyond his self-serving assertions, he cannot show that counsel erred in failing to interview or call these witnesses to testify, let alone establish prejudice for failing to do so.  See Evans v. Cockrell,

285 F.3d 370, 374 (5th Cir. 2002) ("[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative .... unsupported claims regarding the uncalled witness are speculative and disfavored by this Court as grounds for demonstrating ineffective assistance of counsel."); United States v. Ashimi, 932 F2d 643, 650 (7th Cir. 1991) ("... evidence about the testimony of a putative witness must generally be presented in the form of actual testimony or by the witness by affidavit. [Citation omitted].  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").

**b. Failure to Disclose Exculpatory Evidence**

Petitioner asserts in Ground IV of the habeas petition that the State failed to disclose exculpatory evidence in violation of Brady v. Maryland, 383 U.S. 83 (1963).  Specifically, petitioner cites the testimony of Jason Grant's insurance agent, Michael Gordon, at the sentencing hearing, as well as an appraisal report and photographs of the damaged truck obtained by Gordon on behalf of the insurance agency.  To support his assertion in the habeas petition that the failure to disclose the evidence presented by Michael Gordon at the sentencing hearing constituted a Brady violation, petitioner cites his argument in his state Rule 32 proceedings.

In his brief in support of his petition for review filed with the Arizona Court of Appeals, petitioner asserts exculpatory evidence, including testimony from and photos of the vehicle taken

by Michael Gordon, an insurance representative who testified at petitioner's sentencing hearing, should have been disclosed by the prosecution pursuant to the pre-trial discovery requests of the defense.  (See Doc. 16, Exhibit X at p. 13).  Petitioner appears to contend that Gordon's testimony and the photos he took of the vehicle would have supported his defense at trial that Grant gave him permission to use the truck to obtain drugs and to damage the truck as part of an insurance scam.

Petitioner further states:

> The [Trial] Judge apparently agreed that the vehicle at issue did not sustain significant damages as alleged by the victim [Jason Grant].  The Court viewed the photos taken of the vehicle after it was confiscated from petitioner. [Citation omitted].

> This was material exculpatory evidence that the defense counsel neglected to ascertain as to whether the prosecutor was in violation of Rule 15.1 discovery.  Had the material been used during trial, as well as Mr. Gordon being called upon to testify at trial, the result would have been different as to the verdict.

> The witnesses stated herein, had knowledge that was relevant to the condition of the vehicle at issue. These witnesses, had they testified, could have corroborated [sic] with the [Trial] Court's assessment of the vehicle's condition, before the jurors.  Their testimony would have certainly aided the defense in showing the jury that Jason Grant was not being truthful regarding the claims he made about theft and the vehicle's condition.  Such showing of untruthfulness could have been coupled with other areas where the [Grant] told the truth while testifying, [t]hus, testing [Grant's] creditability.

(Doc. 16, Exhibit X at p. 13).

In Brady, the U.S. Supreme Court held that "suppression of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or punishment irrespective of the good faith or bad faith of the

prosecution." <u>Brady</u>, 383 U.S. at 87.  Such evidence is material
if there exists "a reasonable probability that, had the evidence
been disclosed to the defense, the result of the proceeding would
have been different."  A "reasonable probability, is a probability
sufficient to undermine confidence in the outcome." <u>United States</u>
<u>v. Bagley</u>, 473 U.S. 667, 682 (1985).  Three factors are weighed in
assessing a Brady claim: "(a) suppression by the prosecution after
a request by the defense, (b) the evidence's favorable character
for the defense, and (c) the materiality of the evidence." <u>Moore</u>
<u>v. Illinois</u>, 408 U.S. 786, 794-95 (1972).

     Petitioner has provided no evidence to indicate that the
evidence possessed by Gordon for the the insurance company was in
the possession of the prosecution but was "suppressed."  In
addition, petitioner's claim that this evidence is exculpatory is
dubious at best.  Irrespective of the condition of the vehicle,
Jason Grant testified that he did not know petitioner and
petitioner did not obtain his permission to take the truck.  This
testimony is bolstered by the fact that according to Officer
Beauchamp, when he initially stopped petitioner, petitioner could
not identify who gave him permission to drive the stolen vehicle
and gave what can only be described as a generic, nebulous
description of the owner, as a "dude at 61st Avenue and Glendale -
or Grand" and who was white, about 160-180 pounds with brown hair
and green eyes and was about 30 years old.  (Doc. 15, Exhibit I at
p. 100).  Similarly, in addition to Jason Grant's testimony,
Officer Beauchamp testified that the vehicle had sustained damage
when he made the stop and was very muddy.  (<u>Id.</u> at pp. 118-19).

In light of these facts, petitioner's claim that the testimony of Michael Gordon and the photos he took for insurance purposes were exculpatory is without merit.  Though not clear, petitioner seems to argue that if the truck were as damaged as Gordon testified to at the sentencing hearing, the police officers at the scene would have noticed and that this challenges the credibility of the owner (Grant) who testified to extensive damage to the truck after it was recovered.  (See Doc. 16, Exhibit L at pp. 18-21).  It is unclear how the testimony by Gordon at sentencing of extensive damage (which is consistent with Grant's testimony), constitutes exculpatory evidence proving petitioner did not steal the truck and petitioner's effort to explain this is not coherent.

Although the police officers who were present when the vehicle was recovered did not describe extensive damage or note the same in their report, Officer Beauchamp did describe damage to the driver's side door and observed that the car was covered in mud (which may explain why he did not see more damage).  In addition, it was dark at the time and both he and Officer Margiotta, his backup, had other duties to attend to in regard to the felony stop they executed.  As such, any exculpatory value from the testimony of Gordon is doubtful at best and petitioner cannot establish, even if this information was in the prosecution's possession and was not given to them, that it would have made a difference in the outcome of the trial. Petitioner's Brady claim should be denied.

IT IS THEREFORE RECOMMENDED that the Petition for Writ of

1   Habeas Corpus be denied.

2        This Report and Recommendation is not an order that is

3   immediately appealable to the Ninth Circuit Court of Appeals.  Any

4   notice of appeal filed pursuant to Rule 4(a)(1), Federal Rules of

5   Appellate Procedure, should not be filed until entry of the

6   district court's order and judgment.  The parties shall have ten

7   (10) days from the date of service of this Report and

8   Recommendation within which to file specific written objections

9   with the Court.  Thereafter, the parties have ten (10) days within

10  which to file a response to the objections.  Failure to timely

11  file objections to any factual determinations of the Magistrate

12  Judge will be considered a waiver of a party's right to de novo

13  consideration of the factual issues and will constitute a waiver

14  of a party's right to appellate review of the findings of fact in

15  an order or judgment entered pursuant to the Magistrate Judge's

16  Report and Recommendation.

17       DATED this 18th day of August, 2005.

18

19

20       _____

          Virginia A. Mathis

          United States Magistrate Judge

21

22

23

24

25

26

27

28                              26